UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Marathon Petroleum Co. LP,                              Case No. 3:14-cv-2431

          Plaintiff,

    v.                                                              MEMORANDUM OPINION
                                                                           AND ORDER

Bulk Petroleum Corp., et al.,

          Defendants.

## I.    INTRODUCTION

Plaintiff Marathon Petroleum Co. LP has filed a motion for reconsideration of my opinion ruling on the parties' summary judgment motions. (Doc. No. 165). Defendants Bulk Petroleum Corporation, Darshan Dhaliwal, and Debbie Dhaliwal have filed a brief in opposition to Marathon's motion. (Doc. No. 170). Marathon filed a brief in reply. (Doc. No. 174). For the reasons stated below, Marathon's motion is granted.

## II.    BACKGROUND

I laid out the factual and procedural history of this litigation in my earlier summary judgment opinion. (Doc. No. 160). Briefly, this case involves contract and tort claims arising from a business relationship between Marathon and Bulk, which involved the provision of gasoline by Marathon to Bulk, a franchise relationship between Marathon and Bulk, and related matters. I granted in part and denied in part Marathon's motions for summary judgment and denied Defendants' motion for

summary judgment. That decision left to be resolved "Marathon's Counts II and III, Bulk's second counterclaim, Bulk's fifth counterclaim with respect to the Third Amended MIA, and Bulk's seventh counterclaim with respect to the 2009 PSA." (Doc. No. 160 at 58).

Marathon has moved for reconsideration of three sections of my earlier opinion, the first two of which are related. Marathon argues I erred in concluding there was a genuine dispute of material fact as to whether (1) Bulk had breached the Third Amended Master Improvement Agreement ("Third Amended MIA") when Bulk failed to ensure all of its Marathon-branded outlets complied with that contract's imaging standard on or before November 30, 2011; (2) Bulk's breach of the Third Amended MIA was excused by the doctrines of anticipatory repudiation and frustration-of-purpose; and (3) the Dhaliwals' personal guaranties were supported by adequate consideration. (Doc. No. 165).

### III. STANDARD

Motions for reconsideration under Rule 59(e) are not intended to give a party "an opportunity to relitigate matters already decided . . . [or to be] a substitute for appeal." *Turner v. City of Toledo*, 671 F. Supp. 2d 967, 969 (N.D. Ohio 2009) (quoting *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir.2007)). "Whatever may be the purpose of Rule 59(e) it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." *Dana Corp. v. United States*, 764 F. Supp. 482, 489 (N.D. Ohio 1991) (quoting *Durkin v. Taylor*, 444 F. Supp. 879 (E.D. Va. 1977)).

"The major grounds justifying reconsideration of interlocutory orders are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998) (*citing Petition of U.S. Steel Corp.*, 479 F.2d 489, 494 (6th Cir. 1973)). A district court has the "inherent

2

power" to reconsider and to modify an interlocutory order. *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)

## IV. ANALYSIS

### A. THE THIRD AMENDED MIA AND ANTICIPATORY REPUDIATION

I previously concluded Marathon had not shown the absence of a genuine dispute of material fact as to whether Bulk breached the Third Amended MIA by failing to bring all of its retail outlets into compliance with the imaging standards contained in that contract. Upon review of Marathon's motion for reconsideration, I conclude my earlier determination was in error.

When a contract expressly states time is of the essence with respect to a party's affirmative obligation under that contract, the "performance by [that] party at the time specified in the contract or within the period specified in the contract is essential in order to enable him to require performance from the other party." *Lake Ridge Acad. v. Carney*, 613 N.E.2d 183, 186 (Ohio 1993) (emphasis removed) (citation omitted).

The Third Amended MIA became effective on September 8, 2011. (Doc. No. 77 at 2). Section 12 of that agreement required Bulk to "complete each of the reimaging requirements . . . no later than November 30, 2011," and further stated time was of the essence in meeting this deadline. (*Id.* at 12). The failure to meet this deadline would be a material breach of the Third Amended MIA. (*Id.*).

While Section 12 provided Bulk with a window of time, beginning with the Effective Date of the Third Amended MIA, to comply with the reimaging requirements, it also required Bulk to continue performing that obligation after Section 12's deadline. In Section 4(a), Bulk agreed to remain in compliance with the imaging standards throughout the term of the agreement. (Doc. No. 77 at 5). The Third Amended MIA also stated that Bulk's failure to "cause" its retail outlets "to be

3

in full compliance" with the imaging standards "on or after November 30, 2011," was a "Termination Event." (*Id.* at 9).

Upon reconsideration of the terms of the Third Amended MIA and examination of "the contract as a whole," *Sunoco, Inc. v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011), I conclude there is no genuine dispute of material fact as to whether a Termination Event occurred in November 2011. Bulk's failure to comply with its obligations under Section 12 of the Third Amended MIA, by bringing its retail outlets into compliance by the November 30, 2011 deadline stated in that Section, constituted a material breach of the Third Amended MIA.

Moreover, I also conclude I erred in concluding there is a genuine dispute of material fact as to whether Bulk can establish a frustration-of-purpose or anticipatory-repudiation defense.

On July 15, 2011, the United States Bankruptcy Court for the Eastern District of Wisconsin entered an order approving and confirming Bulk's First Amended Plan of Reorganization (the "Bankruptcy Order"). (Doc. No. 2-3). As Marathon notes, the Bankruptcy Order imposes upon Bulk the mandatory obligation to "unconditionally [guarantee] payment of the note executed by CSLM in favor of Marathon." (Doc. No. 2-3 at 17).

A guaranty of payment, unlike a guaranty of collection, does not require a creditor like Marathon to exhaust its remedies against the debtor or to "first seek collection from the principal debtor." *Park Bank v. Westburg*, 832 N.W.2d 539, 551 (Wis. 2013); *see also U.S. Bank Nat'l Ass'n v. Green Meadow SWS L.L.C.*, 9 N.E.3d 433, 442 (Ohio Ct. App. 2014) (holding a creditor may pursue payment by a guarantor under a guaranty of payment whether or not the creditor pursues or obtains relief against the primary debtor); *Campco Distributors, Inc. v. Fries*, 537 N.E.2d 661, 662 (Ohio Ct. App. 1987) (same).

Thus, Bulk was obligated to make payments pursuant to the Bankruptcy Order to the same extent as CSLM, and Marathon was not required to pursue CSLM first or to notify Bulk of any default by CSLM. (*See* Doc. No. 160 at 25). I erred in concluding otherwise.

Moreover, Bulk's guaranty of payment was an express term of the Bankruptcy Order. Therefore, the "non-occurrence" of Marathon's payment demand could not have been "a basic assumption on which" the Third Amended MIA was made, (Doc. No. 160 at 32), and a jury could not conclude Marathon's enforcement of Bulk's payment obligations frustrated the purpose of the Third Amended MIA.

Nor did Bulk's duty to pay the monthly principal installments constitute an increase in the pricing term of the Third Amended MIA. (*See* Doc. No. 160 at 22). The Bankruptcy Order required CSLM to make monthly payments on Marathon's Allowed Claim. (Doc. No. 2-3 at 42). Bulk was independently obligated by the Bankruptcy Order to ensure those payments on Marathon's Allowed Claim were made. (Doc. No. 2-3 at 17). Bulk has failed to show Marathon was prohibited from prioritizing the repayment of its secured claim as the senior interest holder in the bankruptcy proceedings. I conclude Marathon did not impermissibly increase the contract price by applying Bulk's funds first to repayment of Marathon's Allowed Claim and then to Bulk's prepayment obligations under the Third Amended MIA. As a result, I conclude Bulk fails to establish a genuine dispute of material fact as to whether Marathon anticipatorily repudiated the Third Amended MIA.

Upon reconsideration of my earlier decision, I conclude a Termination Event occurred when Bulk failed to ensure its retail outlets were in compliance with the reimaging standard on or after November 30, 2011, and that Marathon was permitted by contract to require Bulk to make the $130,000 monthly payments it guaranteed for CSLM. Therefore, I conclude Marathon is entitled to summary judgment on Count II of the Complaint and on Bulk's fifth counterclaim.

## B. THE DHALIWAL'S PERSONAL GUARANTIES

Upon reconsideration of my earlier ruling and in light of my subsequent review of the documents and the parties' arguments, I conclude I erred in determining the Dhaliwals' personal guaranties were not supported by adequate consideration.

"While it is said that the consideration expressed in a contract is presumed to be the full and entire consideration agreed upon, it is the rule that the recitals of a written instrument as to consideration are not conclusive, and it is competent to inquire into it and show by extrinsic evidence what the real consideration consists of." *Mose Cohen & Sons, Inc. v. Kuhr*, 171 N.E.2d 207, 212 (Ohio Com. Pl. 1959), *decree aff'd sub nom. Mose Cohen & Sons, Inc. v. Al Kuhr Iron & Metal, Inc.*, 171 N.E.2d 216 (Ohio Ct. App. 1960) (quoting 11 Ohio Jurisprudence 2d, Sec. 57, at 295); *see also Conklin v. Hancock*, 66 N.E. 518 (Ohio 1903) (holding the recitation of consideration in a contract is not conclusive and that a contract remains binding even if "the actual consideration, if valuable, . . . [differs] in kind or amount from that recited" in the contract).

The Bankruptcy Order required the Dhaliwals each to "personally guarantee the obligations to Marathon specified in . . . Section 4.2," which included the CSLM payment obligations. (Doc. No. 2-3 at 19). That order also required that "all guaranties (including the Dhaliwal guaranties) . . . shall be executed prior to the Effective Date [of the bankruptcy plan]." (*Id.* at 17). Moreover, Bulk and Marathon agreed the Dhaliwals would execute and deliver unconditional personal guaranties as an express condition precedent to the effectiveness of the Third Amended MIA. (Doc. No. 77 at 2-3).

Where the parties have entered into multiple agreements which were contingent upon one another and which concerned the same transaction, I may construe those documents together. *Center Ridge Ganley, Inc. v. Stinn*, 511 N.E.2d 106, 109 (Ohio 1987); *see also Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997) ("[A] writing, or

6

writings executed as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole."). I conclude the agreements at issue in this litigation, when taken as a whole, clearly establish the existence of consideration sufficient to support the Dhaliwals' personal guaranties.

As I stated above, guaranties of payment, such as those the Dhaliwals executed, do not require a creditor to first seek recovery from the principal debtor. *Park Bank*, 832 N.W.2d at 551; *U.S. Bank Nat'l Ass'n*, 9 N.E.3d at 442. The guaranties are enforceable as written and I conclude Defendants fail to demonstrate a genuine dispute of material fact as to the breach of these agreements. Marathon is entitled to summary judgment on Count III of its complaint.

### C. MISCELLANEOUS MATTERS

As I indicated in my earlier opinion, there may be some question remaining concerning the amount of damages Marathon incurred. Therefore, I will not assess damages, including liquidated damages, in this opinion.

Further, in light of my determination that Marathon was contractually permitted to require Bulk to make the $130,000 monthly payments it guaranteed for CSLM, I also conclude there is no genuine dispute of material fact as to whether a reasonable juror could conclude Marathon violated the spirit of the 2009 Product Supply Agreement ("PSA"). (*See* Doc. No. 160 at 26-29). When viewed together, the parties' agreements plainly authorized Marathon to demand repayment of its secured claim, and the priority Marathon assigned to this repayment does not violate the spirit of the parties' agreements. *See Center Ridge Ganley, Inc.*, 511 N.E.2d at 109. Upon reconsideration, I conclude Marathon is entitled to summary judgment on Bulk's seventh counterclaim alleging Marathon breached the 2009 PSA.

I have not reconsidered my decision to "deny Marathon summary judgment on Bulk's second counterclaim with respect to Bulk's claims of breach in overcharging for product and

7

refusing to make gasoline available within a reasonable time," (Doc. No. 160 at 53), because the parties' briefing did not seek reconsideration of that section of my earlier opinion.

V.     CONCLUSION

For the reasons stated above, Marathon's motion for reconsideration, (Doc. No. 165), is granted. I grant summary judgment in Marathon's favor on Marathon's Counts II and III, on Bulk's fifth counterclaim with respect to the Third Amended MIA, and on Bulk's seventh counterclaim with respect to the 2009 PSA.

So Ordered.

                                         s/ Jeffrey J. Helmick
                                         United States District Judge